**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KENNETH BAYS,**

                **Plaintiff,**

**-vs-**                                                          **Case No. 6:10-cv-1577-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**

_____

# Memorandum Opinion & Order

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on January 27, 2008. R. 113-17, 120-23. He alleged an onset of disability on November 8, 2006, due to pain in the lower back, right leg, knee, and hip. R. 54-56, 132, 162-166, 183. His application was denied initially and upon

reconsideration. R. 58-61, 62-72. Plaintiff requested a hearing, which was held on September 9, 2009, before Administrative Law Judge Marc Mates (hereinafter referred to as "ALJ"). R. 24-52. In a decision dated October 16, 2009, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 11-23. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 9. The Appeals Council denied Plaintiff's request on June 25, 2010. R. 5-8. Plaintiff filed this action for judicial review on October 25, 2010. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff was born on October 13, 1966 and was 40 years old on the alleged disability onset date and forty-three years old at the time of the hearing; had graduated from high school. R. 29, 168. Prior to November 8, 2006, the alleged onset date of disability. R. 113, 120. Plaintiff had worked as a laborer, as a brick layer, and as a roofer. R. 137-145, 163.

Plaintiff's medical history is set forth in detail in the ALJ's decision. Approximately twenty years prior to the onset date, Plaintiff was involved in a motorcycle accident and suffered (along with other injuries not relevant here) a fracture of the right femoral shaft, necessitating surgery and placement of a fixation rod in his right leg. R. 205-10, 217. For many years, Plaintiff did not have pain from this accident, however, around the beginning of 2008, he began to experience pain in the lower back, in the right leg from a cracked rod in the femur from the accident, in the knee, and hip; he also complained of high blood pressure and anxiety. R. 54-56, 132, 162, 164, 166, 183. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from complications of an internal orthopedic device (right femur) and spondylolisthesis of L5 upon S1, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 17. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work which does not involve climbing, although he can engage in all other postural

activities, including stooping and crouching, on an occasional basis, with pushing and pulling of the lower extremities is also limited to occasional, and no more than moderate exposure to vibration and hazards. R. 17. In making this determination, the ALJ found that Plaintiff's statements regarding his limitations concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. R. 18. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 21. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as routing clerk, surveillance system monitor, and grader/sorter. R. 22. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 22.

Plaintiff now asserts five points of error. First, he argues that the ALJ erred by by finding he had the RFC to perform sedentary work contrary to statements by his treating physician. Second, Plaintiff argues that the ALJ erred in failing to determine that the claimant suffered from the severe impairment of Spina Bifida Occulta. Third, he contends the ALJ erred by improperly applying the pain standard.. Fourth, Plaintiff asserts that the ALJ erred in failing to consider the side effects of his medications. Fifth, he argues that the ALJ erred in evaluating his credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments

(considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.  ISSUES AND ANALYSIS

### A.  A severe impairment

Plaintiff argues that the medical evidence showed he suffered from a severe impairment resulting from spina bifida occulta because this condition resulted in significant limitations, and the impairment was well-documented. The Commissioner argues that the ALJ did not err because he found a severe impairment in Plaintiff's lower back (R. 17), even if it was for lumbar spondylolistheses and not spina bifida occulta , and he continued in the analysis to consider Plaintiff's impairments in the next step in the evaluation process.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that his impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

There are ample complaints of back pain from Plaintiff in the record. An x-ray of Plaintiff's lumbar spine on January 25, 2008 revealed an incomplete fusion of the ossification centers of the left transverse process at L1 and an incomplete fusion of the posterior elements of L5; and there was grade 1/2 spondylolistheses of L5/S1 and narrowing of the disc space. R. 231. An x-ray of the pelvis also indicated an incomplete fusion of the posterior elements of L5 and a fracture intramedullary rod within the femur; however there were no abnormalities in the pelvis or hip. R. 232-33. During an

exam on February 27, 2008, orthopedic surgeon Jack R. Steel, M.D., diagnosed Plaintiff with spina bifida occulta and complication of an internal orthopedic device in his right femur.  R. 235.

The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once an ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments an ALJ determined were not severe. *Jamison v. Bowen*, 8 14 F.2d 585, 588 (11th Cir. 1987); *see also Phillips,* 357 F.3d at 1238. The ALJ must make specific and well-articulated findings as to the effect of the combination of all of the claimant's impairments. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). However, a clear statement that an ALJ considered the combination of impairments constitutes an adequate expression of such findings. *See Jones v. Dep't of Health & Human Servs.*, 94 1 F.2d 1529, 1533 (11th Cir. 1991).

In this case, although the ALJ did not find Plaintiff had a severe impairment of spina bifida occulta – or even mention it separately – the ALJ did find that Plaintiff's spondylolistheses of L5/S1of the lumbar spine was severe and caused Plaintiff some limitations (*i.e.,* to sedentary work with postural limitations) from pain in Plaintiff's lower back.  Moreover, although Dr. Steel diagnosed Plaintiff with spina bifida occulta, he did not prescribe any specific restrictions or limitations based on that diagnosis, and instead focused on the broken rod in Plaintiff's femur that was causing hip pain. Doc. 235.  Even assuming the ALJ erred when he concluded Plaintiff's spina bifida occulta was not severe a impairment, that error was harmless because the ALJ progressed to the next step in the five-step evaluation process and considered all of Plaintiff's impairments in combination– including his lower back restrictions–at later steps in the evaluation process.  See R. 17-20.

**B.     RFC and the treating physicians' opinions.**

Plaintiff argues that the ALJ in determining that the claimant has the residual functional capacity to perform sedentary work when Plaintiff's treating physician, Dr. Velleff, indicated Plaintiff

had a more restrictive residual functional capacity, and no other examining physician indicated that the claimant had the residual functional capacity as determined by the ALJ. The Commissioner argues that the ALJ is not confined to simply adopting a treating physician's opinions and the ALJ properly gave little weight to the limitations opined by Dr. Velleff.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.*

While it is true, as the Commissioner argues, that the ALJ determines Plaintiff's RFC, he must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

From late January to March 2008, Plaintiff was treated at KDMC Family Care Center for complaints of right knee, hip and back pain. R. 237-38. On February 27, 2008, Dr. Steel reviewed the x-rays and told Plaintiff that "removal of the prominent proximal rod will alleviate the symptoms of discomfort at the lateral hip. Removal of the distal portion of the rod would be difficult since the nail is broken. He is primarily interested in the prominent proximal rod and would feel more secure

if the remainder of the rod were left in place. The surgery would be done as an outpatient. He would probably need to use his cane post-op in the left hand for awhile post op." R. 235-36. Dr. Steel discussed the risks and benefits of removing the broken rod from the right femur and Plaintiff was unsure if he wanted to have the rod removed. R. 235.

On March 5, 2008, James Aphrem, D.O., reviewed Dr. Steel's report, prescribed pain medication, and referred Plaintiff to pain management. R. 238. A week later, Plaintiff presented to Thomas K. Velleff, M.D., for complaints of lower back pain, right leg pain, and status-post rod problems in the right leg. R. 285. Dr. Velleff noted the broken rod needed to be removed; he also prescribed medications, and recommended that Plaintiff follow up with an orthopedic physician for removal of the rod. R. 286. From April to September 2008, Plaintiff saw Dr. Velleff five more times. R. 287-92. At that time, Dr. Velleff prescribed medications, but did not limit Plaintiff in any activities. R. 285-91. Eleven months later, on August 19, 2009, Dr. Velleff, filled out a form entitled "Medical Opinion Re: Ability To Do Work-Related Activities (Physical)[1]" and opined that Plaintiff could lift ten pounds occasionally; lift less than ten pounds frequently; stand and walk less than two hours in an 8-hour day; sit about two hours in an eight hour day; could sit for twenty to thirty minutes before changing positions; stand for twenty to thirty minutes before changing positions; and could never twist, stoop, crouch, climb stairs or climb ladders. R. 294-96. Such limitations would limit Plaintiff to less than sedentary work. *See* R. 22 (VE testified that a hypothetical person with such limitations would not be able to perform any other work).

The ALJ discounted Dr. Velleff's opinion:

In determining the claimant's residual functional capacity, little weight has been afforded to the recent treating source opinion from Thomas Velleff, M.D., as it is found to be overly restrictive, inadequately supported, and inconsistent with the weight of the evidence of record as a whole. In the August 2009 assessment, Dr.

---

[1]The form appears similar to the official SSA form but is not on the official form. R. 294-96.

Velleff indicates that claimant is capable of lifting/carrying ten pounds, but can stand/walk less than two hours and sit about two hours in an eight hour work day. He further provides, among other limitations, that claimant can sit, stand, or walk no more than twenty-to-thirty minutes at a time before changing position; needs an opportunity to shift position at will from sitting or standing/walking; and needs to lie down at unpredictable intervals during a normal work shift. The degree of limitation ascribed by Dr. Velleff appears overly restrictive, and seems to reference only claimant's complaints of back and hip pain in support. The undersigned accordingly ascribes little weight to Dr. Velleff's August 2009 assessment.

By contrast, the degree of work-related restriction assessed by the State agency medical consultants appears reasonable and consistent with the weight of the evidence of record as a whole, thus warranting greater weight (Exhibits 10F and l2F). These consultants allowed claimant to lift more weight, but limited standing and/or walking to two hours total in an eight hour work day, essentially limiting claimant to sedentary work. They also ascribed environmental limitations, as reflected in the above residual functional capacity finding.

Claimant's treatment history is well-documented and supportive of work-related restriction, but the evidence shows that he has received limited treatment overall and improvement is expected with surgical intervention, if elected. . . . Aside from the broken intramedullary rod, studies have shown the fracture to be well-healed (see, e.g., Exhibits 3F, 4F, SF, and 6F). With respect to claimant's pelvis, studies have shown no evidence of acute or significant abnormality. Claimant was formally referred for pain management in March 2008 (see Exhibit 7F), but there is no documentation that he has pursued more aggressive treatment. There is also no evidence of leg length discrepancy (see Exhibit 6F).

The February 2008 remarks of Dr. Steel have been considered. Dr. Steel indicated that removal of the prominent proximal rod would alleviate claimant's symptoms of discomfort at the lateral hip; removal of the distal portion of the rod would be difficult because of the broken nail (Exhibit 6F). Dr. Steel did not otherwise render an opinion as to claimant's work-related capabilities.  State agency medical consultant Dr. David Swan indicated, however, that "[r]emoval of the distal broken fragment which apparently was the cause of the pain could be carried out as an outpatient in a relatively minor procedure" (Exhibit 10F, p. 3). With regard to claimant's back complaints, while a lumbar spine series indicated some spondylolysis and narrowing of the LS/S 1 disk space, it otherwise showed all other disk spaces to be well-maintained and there was no evidence of fracture or destructive process (Exhibit SF). Examination of the back showed no tenderness, no muscle spasm, no pain, and normal posture and gait (Exhibit 2F). There are no references of record to significant motor dysfunction, sensory loss, or reflex abnormality, and no indication that claimant has pursued more aggressive treatment for his back complaints to date, which might support a further reduction in claimant's residual functional capacity.

Prior to treatment in early 2008, claimant seemingly managed his pain with over-the-counter pain medication. Although he alleges current side effects of

-9-

        medication to include drowsiness, a restriction against exposure to work hazards (such as dangerous moving machinery and heights) would seemingly provide enough precaution to address those allegations. As previously discussed, there is no basis within the record to establish additional limitations, and the undersigned is persuaded that the foregoing limitations contain all inferences regarding the claimant's impairments and the degree of severity thereof which are raised by the objective and credible evidence of record, and that a further degree of work -related restriction is unwarranted.

R. 19-20.

Plaintiff contends that the ALJ erred in discounting Dr. Vellef's opinion because there was objective medical evidence of Plaintiff's impairment[2]. Doc. 16. Plaintiff argues that Dr. Velleff's opinion is supported by the evidence of record, in that objective testing confirmed that Plaintiff had problems with his hip and the broken rod in his leg. R. 235. As explained in the prior section, Dr. Steel reviewed a CT scan of the right femur and noted that it showed a healed midshaft fracture with a Kuntschner nail in place with the nail protruding from the greater trochanter by about 2-3 inches; "removal of the prominent proximal rod will alleviate the symptoms of discomfort at the lateral hip," but "[r]emoval of the distal portion of the rod would be difficult since the nail is broken." R. 235. The lumbar spine x-ray also indicated an incomplete fusion of the ossification centers of the left transverse process at L1; an incomplete fusion of the posterior elements of L5; Grade ½ spondyloslysis of L5 upon S1; and narrowed disc space at L5-S1. R. 228. Plaintiff argues that Dr. Velleff's opinion should have been accorded more weight than that of the non-examining physicians or the ALJ, who cannot come to his own conclusions regarding the limitations of Plaintiff by substituting his judgment for that of the medical and vocational experts.

The Commissioner argues that the ALJ properly discounted Dr. Velleff's opinion because, significantly, he had not treated or evaluated Plaintiff for almost one year at the time that he

---

[2]Plaintiff also argues that Dr. Vellef's handwritten records are practically illegible and persuasive case law from other circuits mandates reversal because there is no way for the reviewing court to determine whether the ALJ fully understood the evidence. Doc. 16 at 10 (citing cases). The notes are somewhat more difficult, but not impossible, to read; the Commissioner accurately represents the contents, and the Court can make out virtually all of the notes and medical shorthand.

completed the "checkbox/fill-in-the-blank" form indicating severe functional restrictions. R. 294-96. The Commissioner cites the ALJ's determination that Dr. Velleff "offered very little support or explanation for the severe limitations opined in this form and because they were "inconsistent with the record as a whole." R. 19.  The Commissioner also argues that, as noted by the ALJ (R. 19), the severe limitations opined by Dr. Velleff were inconsistent with the weight of the record evidence as a whole.          The Commissioner also argues that the ALJ properly gave little weight to the limitations opined by Dr. Velleff based on benign physical exam findings, including normal gait, normal muscle bulk/ contour/tone, the absence of any lumbar pain/spasm/tenderness, and a negative straight leg raise test (R. 220-28), and argues that there is no disc herniation, even though Dr. Velleff indicated that  there was on the form he completed. R. 295.

The ALJ's rejection of Dr. Velleff's opinion, and implicit discounting of Dr. Steel's remarks that the "removal of the distal portion of the rod would be difficult because of the broken nail," *i.e.*, that it was possible that it would never be removed, was not based on substantial evidence. The ALJ concluded that "[a]side from the broken intramedullary rod, studies have shown the fracture to be well-healed," and there was no problem with Plaintiff's pelvis. R. 20.  However, that does not negate the fact that there was objective medical evidence of a condition that Dr. Steel and Dr. Velleff opined was causing Plaintiff significant pain to warrant the suggested surgery.

Plaintiff testified that Dr. Steel told him that surgery possibly would help. R. 38.  He told Plaintiff he could do surgery on the femur and take the top of it out, but "more than likely it would shatter the bone" so he would have to go in and replace the whole femur." R. 38.  Dr. Steel told Plaintiff that surgery on the top part "might help with a little bit of" the hip pain but "no guarantee," and would not affect the back pain. R. 39.  Dr. Steel said that the surgery to replace the whole femur would cost $50,000; the more simple operation just to replace the top broken piece (with no guarantee of success) would cost $5,000. R. 39-40.  Plaintiff could not afford even the less expensive surgery.

*Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("While a controllable medical condition is generally not disabling, if the claimant cannot afford the treatment and can find no way to obtain it, poverty may excuse the non-compliance."). The ALJ failed to even comment on Plaintiff's inability to afford the surgery that was the central underpinning to the ALJ's finding that Plaintiff failed to "pursue more aggressive treatment." R. 20. The ALJ also discounts the severity of the broken rod in Plaintiff's femur because "there is also no evidence of leg length discrepancy" (citing Ex. 6F - R. 235-36) even though no physician cited that as evidence Plaintiff was not impaired or limited. The ALJ's decision is not supported by substantial evidence. To the extent there is some question about Dr. Velleff's opinion because he has "discipline on file" with the State of Florida (R.297), the ALJ may order a consultative examination with a different physician, such as an orthopedic surgeon without a problematic record, on remand.

To the extent Plaintiff argues that the ALJ erred in stating Plaintiff's restrictions concerning exposure to vibration and hazards**,** the Commissioner does not dispute that the ALJ's RFC determination did not match "verbatim" those opined by the state agency physicians (R. 268, 279), but argues any discrepancy was harmless error because the operative hypothetical to the VE accurately described the limitation as "avoiding moderate exposure to vibration and hazards." The Court need not reach this issue, but on remand the ALJ will consider the appropriate restriction for exposure to vibration and hazards.

### C.     Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his leg and hip pain and by finding his subjective complaints credible only to the extent they are not inconsistent with the RFC as determined by the ALJ. R. 18. The Commissioner again argues that benign examination findings in Plaintiff's lower back and the availability of surgery to fix the pain in Plaintiff's leg/hip negate his statements regarding limitations.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ did not refer to the Eleventh Circuit's pain standard since Plaintiff's case was handled in the West Virginia area (where he first filed it); however, the ALJ did cited the applicable regulations and Social Security Rulings. R. 17. The ALJ discussed in pertinent part Plaintiff's hip and femur issues without really discounting their severity, except to the extent Dr. Steel had recommended surgery and Plaintiff did not pursue the surgery:

> The evidence clearly supports that claimant has limitations stemming from his musculoskeletal and orthopedic difficulties; however, the evidence of record fails to support the degree of severity and/or functional limitation described by claimant-*i.e.*, disabling impairment. The evidence of record supports that claimant has severe impairments limiting him to a reduced range of sedentary work, most notably, as a result of standing/walking limitations of no more than two hours out of an eight-hour work day.
>
> As discussed above, claimant sustained injuries in a 1987 motorcycle accident. Most notably, he sustained a compound midshaft fracture of the right femur with involvement of the right knee (Exhibit IF). At the time, he required emergent internal fixation and repair of the extensor laceration of the right knee and closed reduction and

-13-

>    pinning of the distal radial fracture. The evidence indicates that he recovered satisfactorily. But, in February 2008, Jack Steel, M.D., of the Scott Orthopedic Center, noted claimant's increased right hip problems related to a complication of the internal orthopedic device (Exhibit 6F). Dr. Steel noted that diagnostic studies showed a healed right midshaft fracture but a nail broken within the bone just proximal to the lesser trochanter. Dr. Steel recommended surgery, and told claimant that removal of the prominent proximal rod could alleviate his lateral hip discomfort. (Removal of the distal portion of the rod, however, would be difficult because of the broken nail.) On physical examination, Dr. Steel observed palpable tenderness of the right hip from the superior aspect of the greater trochanter extending into the buttock, and pain on internal and external rotation.
>
>    In addition, the record includes diagnostic studies suggesting grade 1 to 2 spondylolisthesis of L5 upon S1 and a narrowed LS/S 1 disk space (Exhibit SF). A January 2008 progress note reflects claimant's report of back pain, but no leg pain or muscle weakness (Exhibit 2F). On physical examination, he had no tenderness to palpation of the lumbosacral spine, no pain, no muscle spasm, negative straight leg raising tests, and normal posture and gait. Accordingly, Maria Sy, M.D., recommended NSAIDs, heat, and physical therapy as needed. *In light of these findings, partial credibility is afforded to claimant's subjective reports of pain and limitation to the extent consistent with the residual functional capacity described above*. However, for reasons set forth below, the evidence supports a finding that despite some impairment and residual limitation, claimant retains the ability to engage in a reduced range of work activity.

R. 18-19 (emphasis added).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

As explained above, the ALJ's findings regarding limitations from Plaintiff's femur/hip impairment was not based on substantial evidence. Similarly, the ALJ's discounting of Plaintiff's credibility as to his hip pain due to the broken rod in his femur, and his inability to afford the surgery to repair it, was not based on substantial evidence. On remand, the ALJ will properly apply the

-14-

Eleventh Circuit pain standard in deciding Plaintiff's credibility regarding the non-exertional impairment of pain.

### IV.   CONCLUSION

Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 14, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record